BROWN, Appellant,

v.

GALLAGHER, Appellee.

[Cite as Brown v. Gallagher, 179 Ohio App.3d 577, 2008-Ohio-6270.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 07CA2989.

Decided Nov. 26, 2008.

---

2. We need not review whether the depositions were properly filed or should have been considered by the trial court.

578

James T. Boulger, for appellant.

Thomas M. Spetnagel and Paige J. McMahon, for appellee.

McFARLAND, Judge.

{¶ 1} Plaintiff-appellant, John Brown, appeals the decision of the Chillicothe Municipal Court granting a motion to dismiss his complaint against defendant-appellee, Jason Gallagher. Appellant contends that the trial court erred when it held that his complaint, founded on the indemnification provisions of a release of all claims executed by appellee, failed to state a claim upon which relief could be granted. Because there is no clear public policy in Ohio that would prevent the enforcement of the indemnification, we find that the trial court's dismissal under Civ.R. 12(B) was improper. Accordingly, we sustain appellant's assignment of error and overrule the decision of the trial court.

### I. Facts

{¶ 2} This appeal is predicated upon a settlement agreement the parties entered into as a result of an auto accident. In 2002, appellant's vehicle collided into appellee in Union Township, Ross County. At the time, appellee was employed as a deputy sheriff with the Ross County Sheriff's Department. As a result of injuries he sustained in the incident, appellant brought suit against appellee. Before the case came on for trial, the parties entered into a settlement agreement. As part of that agreement, and in consideration of $87,500, appellee executed a document entitled "Release of All Claims," in which he agreed to indemnify appellant for "any and all claims, liability, and expense, including attorney's fees, for any claim or demand of any party, and any claim or demand of any third party" resulting from the auto collision. That indemnification agreement is at the center of the current appeal.

{¶ 3} Subsequent to the civil settlement, appellant pleaded guilty to a charge of vehicular assault in the criminal case that arose from the same incident. The trial court sentenced him to 17 months in prison, though he was granted judicial release after serving only two. The court further ordered appellant to pay $7,923.44 in restitution to the Ross County Sheriff's Department for leave payments the department had made to appellee during his convalescence.

{¶ 4} As a result of being ordered to pay restitution to the Sheriff's Department in the criminal case, appellant filed a complaint against appellee in the Chillicothe Municipal Court for $7,923.44, based on the indemnification provisions of their settlement agreement. Appellee then filed a motion to dismiss the complaint for failure to state a claim for which relief can be granted under Civ.R. 12(B). Appellant failed to respond to appellee's motion. The trial court subsequently granted appellee's Civ.R 12(B) motion and dismissed the complaint. Appellant now appeals that decision.

## II. Assignment of Error

The trial court erred in holding that a claim based upon the indemnification provisions of a release of all claims agreement failed to state a claim upon which relief could be granted under Civil Rule 512(B) [sic].

## III. Standard of Review

{¶ 5} In his sole assignment of error, appellant argues that the trial court erred in granting appellee's motion under Civ.R. 12(B). Because it presents a question of law, we review a trial court's decision regarding a motion to dismiss independently and without deference to the trial court's determination. See *Roll v. Edwards*, 156 Ohio App.3d 227, 2004-Ohio-767, 805 N.E.2d 162; *Noe v. Smith* (2000), 143 Ohio App.3d 215, 218, 757 N.E.2d 1164. "A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.* (1992), 65 Ohio St.3d 545, 548, 605 N.E.2d 378. A trial court may not grant a motion to dismiss for failure to state a claim upon which relief may be granted unless it appears "beyond a doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus; see also *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981.

{¶ 6} Furthermore, when considering a Civ.R. 12(B)(6) motion to dismiss, the trial court must review only the complaint, accepting all factual allegations as true and making every reasonable inference in favor of the nonmoving party. *Sprouse v. Miller*, 4th Dist. No. 06CA37, 2007-Ohio-4397, 2007 WL 2410894, at ¶ 5; see also *JNS Ents., Inc. v. Sturgell*, 4th Dist. No. 05CA2814, 2005-Ohio-3200, 2005 WL 1492002.

## IV. Legal Analysis

{¶ 7} Appellant states the following in supporting his claim that appellee is obligated to indemnify him for the court-ordered restitution: (1) that he and appellee had previously entered into a settlement agreement concerning the injuries and damages suffered by appellee as the result of the collision, (2) that as a result of that settlement, appellee agreed to indemnify appellant for any claims asserted against him as a result of the accident, (3) that appellant was subsequently convicted of a crime arising from the accident, (4) that his sentence included an order to pay restitution in the amount of $7,923.44 to the Ross County Sheriff's Department for injury-leave payments made to appellee as a consequence of injuries he sustained in the accident, and (5) that the settlement agreement obligated appellee to indemnify appellant against his restitution

obligation. In light of these assertions, appellant demanded in his prayer for relief that he be awarded judgment against appellee in the amount of the restitution ordered in the criminal case, $7,923.44.

{¶ 8} Initially, we note that due to a change in the law, the kind of restitution order that gave rise to the current appeal is no longer likely to occur. The statutory authority allowing a trial court to include an order of restitution during sentencing is found in R.C. 2929.18(A)(1). At the time of appellant's vehicular assault, R.C. 2929.18(A)(1) specifically provided that courts could order the offender to reimburse third parties for amounts paid to the victim. However, on June 1, 2004, the statute was amended and the references to third-party restitution were largely eliminated. Under the amended version of the statute, a trial court's authority to order an offender to reimburse third parties is limited.[1]

{¶ 9} Appellee's argument, that appellant's complaint does not contain a claim for which relief can be granted, rests entirely upon a public-policy argument. Appellee asserts that enforcing the indemnification provisions of their settlement agreement would be injurious to the state and, therefore, violate public policy. The crux of his argument is that public policy forbids a party from contracting with another for the indemnification of a restitution order imposed in a criminal case. For the following reasons, we decline to adopt this view.

{¶ 10} "[P]ublic policy is that principle of law which holds that no one can lawfully do that which has a tendency to be injurious to the public or against the public good. Accordingly, contracts which bring about results which the law seeks to prevent are unenforceable as against public policy." *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, at ¶ 64, quoting 17 Ohio Jurisprudence 3d (1980) 528, Contracts, Section 94. "In the absence of specific public policy exceptions, however, an agreement to indemnify another is generally enforceable." *Worth v. Aetna Cas. & Sur. Co.* (1987), 32 Ohio St.3d 238, 241, 513 N.E.2d 253. "Furthermore, it has been stated that in addressing public policy arguments, courts must be mindful that freedom to contract is fundamental. An agreement freely entered into between the parties should not be lightly disregarded unless it clearly contravenes an established public interest." (Citations omitted.) *Core Funding Group, L.L.C. v. McDonald,* 6th Dist. No. L-05-1291, 2006-Ohio-1625, 2006 WL 832833, at ¶ 59.

{¶ 11} Here, appellee asserts that enforcing the settlement agreement would "completely vitiate the important public policy of felony sentencing." He states

---

1. "[A] trial court under the current version of R.C. 2929.18(A)(1) retains the discretion to order that restitution be paid to certain third parties, namely, an adult probation department, the clerk of courts, or another agency designated by the court." *State v. Bartholomew,* 119 Ohio St.3d 359, 2008-Ohio-4080, 894 N.E.2d 307, at ¶ 14.

that allowing a party to contractually indemnify itself from a restitution order in a felony case would injure the public by nullifying the twin aims of felony sentencing as stated in R.C. 2929.11, that is, protecting the public from future crimes and punishing the offender. We do not find this argument persuasive.

{¶ 12} We note that appellee provides no authority that directly supports his argument. Though, in his brief, appellee states that "Ohio law does not recognize a claim for breach of contract directed toward making a party to a civil contract pay a criminal offender's financial sanction," he cites no law for this proposition and, in our own search, we were unable to find any Ohio case that directly addresses the issue. However, other jurisdictions have found that in some circumstances, public policy does *not* prevent an offender from being so indemnified:

{¶ 13} "There may be no dispute that one may not contract for indemnification for the consequences of a criminal or illegal act to occur in the future. But the distinction has always been sharply made, with contrary effect, with respect to agreements to indemnify one *post factum* for the financial consequences of a crime or illegal act. In other words, one may make an agreement to be indemnified or to indemnify with respect to a crime or illegal act which occurred prior to the making of the agreement. This has been the law for many years throughout the United States and in this State." (Citations omitted.) *Feuer v. Menkes Feuer* (1959), 8 A.D.2d 294, 297–298, 187 N.Y.S.2d 116. "[W]ith respect to past events, there may be many quite valid, and even desirable, purposes in allocating the ultimate financial responsibility among persons involved in a transaction or relation." Id. at 298, 187 N.Y.S.2d 116.

{¶ 14} The 8th Circuit Court of Appeals recently examined the issue in *Katun Corp. v. Clarke* (C.A.8, 2007), 484 F.3d 972. In deciding that the appellant could be indemnified for criminal penalties under a settlement agreement when the wrongdoing occurred before the settlement was reached, the court stated that "[b]ecause the indemnification provision at issue in this case did not create the kind of negative incentives normally associated with attempts to insure against penal sanctions and because a contract should not be voided absent an unmistakable violation of public policy, we cannot conclude that the claim for indemnification was an illegal demand or patently in violation of public policy." (Citation omitted.) Id. at 978. See also *Brauer v. Cent. Trust Co.* (1980), 77 A.D.2d 239, 433 N.Y.S.2d 304; *Pettit Grain & Potato Co. v. N. Pacific Ry. Co.* (1948), 227 Minn. 225, 35 N.W.2d 127.

{¶ 15} In the case sub judice, appellee and appellant entered into the settlement agreement more than two years after the vehicular assault occurred. Nothing in the agreement indemnifies appellant for prospective acts or in any way encourages future illegal behavior. Instead, the agreement simply allocates

financial responsibility for the consequences of the prior illegal act: in consideration of $87,500, appellee agreed to indemnify appellant for all financial obligations that might arise from the incident. As indicated in the cases cited above, in such instances the public interest in protection from future crimes is not injured.

{¶ 16} Further, we do not believe that the type of indemnification sought in the case sub judice in any way limits a trial court's power to order restitution. Appellee cites *State v. Gray*, 7th Dist. No. 02 BA 26, 2003-Ohio-805, 2003 WL 403561, to illustrate that a civil settlement cannot be used to limit a trial court's restitution order. In *Gray*, the court ruled that it need not assume that a civil settlement fully compensated the victim and, similarly, that the source of funds used to accomplish restitution could not be restricted by the settlement. Id. at ¶ 21–22. Nothing in our present ruling conflicts with *Gray*. Our decision does not limit the authority of a trial court to order full restitution in a criminal matter. Instead, our decision simply states that there is no clear public policy that prevents an offender from contractually allocating responsibility for that restitution once the offense has already taken place.

## V. Conclusion

{¶ 17} In our view, there is no clearly established public policy in Ohio law that would prohibit the enforcement of the indemnity provisions of the parties' settlement agreement. Further, we decline to announce the existence of such a new public policy in the case sub judice. Thus, we find that the trial court erred in granting appellee's Civ.R. 12(B) motion for failure to state a claim for which relief can be granted. Accordingly, appellant's assignment of error is sustained, and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

HARSHA, J., concurs in judgment only.

KLINE, J., dissents.

KLINE, Judge, dissenting.

{¶ 18} I respectfully dissent from the majority's judgment to reverse the judgment of the trial court.

{¶ 19} I believe that the indemnity agreement in this case, even if it technically encompassed criminal restitution, would be void as contrary to the purposes of imposing criminal restitution set forth in R.C. 2929.11(A). This conclusion is especially true in light of the fact that R.C. 2929.18(A)(1), the statute giving criminal courts the authority to impose restitution, protects a criminal defendant

from the harm the indemnity clause seeks to avoid, i.e., having to pay the same damages twice. R.C. 2929.18(A)(1) states that "[a]ll restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or any survivor of the victim against the offender."

{¶ 20} Recognizing the concern of a victim's potential double recovery from receiving both a civil recovery and criminal restitution, this court has held that "[r]estitution is limited to the actual loss caused by the defendant's criminal conduct" and where a victim was already compensated for losses suffered as the result of the offender's criminal conduct, the criminal offender could not "properly be ordered to pay restitution to the victim, since it would result in an economic windfall." State v. Martin (2000), 140 Ohio App.3d 326, 337, 747 N.E.2d 318.

{¶ 21} In my view, any issue Brown has regarding multiple payments for the same damages must be addressed in the criminal court, not in a separate civil action. The onus is on the criminal defendant to "ask the court in the criminal case to credit any amounts" already recovered by the person awarded restitution. State Farm Mut. Auto. Ins. Co. v. Hill, Greene App. No. 2006 CA 24, 2007-Ohio-581, 2007 WL 431475, ¶ 12. Allowing Brown to forgo his potential right to a setoff under R.C. 2929.18(A)(1), and instead pursuing an action against the victim of his crime under an indemnity clause set forth in a civil settlement agreement should be prohibited.

{¶ 22} By dissenting, I do not intend to imply that Brown has, in fact, been ordered to pay the same damages twice. As noted by the majority, courts "need not assume that the victim has been fully compensated merely because the victim settled a civil claim with the defendant." State v. Gray, Belmont App. No. 02 BA 26, 2003-Ohio-805, 2003 WL 403561, ¶ 21.

{¶ 23} Accordingly, for the above stated reasons, I dissent.