[Cite as *State v. Browning*, 190 Ohio App.3d 400, 2010-Ohio-5417.]

IN THE COURT OF APPEALS OF OHIO

FOURTH APPELLATE DISTRICT

HIGHLAND COUNTY


THE STATE OF OHIO,                          :


      Appellee,                          :    Case No.  09CA36


      v.                          :


BROWNING,                          :        DECISION AND JUDGMENT

                                  ENTRY


      Appellant.                          :


_____


APPEARANCES:


James B. Grandey, Highland County Prosecuting Attorney, and Anneka P. Collins, Assistant Prosecuting Attorney, for appellee.


Susan M. Zurface Daniels, for appellant.


_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 11-2-10

ABELE, J.

{¶ 1} This is an appeal from a Highland County Common Pleas Court judgment of conviction and sentence. A jury found Iva Browning, defendant below and appellant herein, guilty of two counts of attempted felonious assault on a peace officer in violation of R.C. 2923.02 and 2903.11(A)(1).

{¶ 2} Appellant assigns the following errors for review:

First Assignment of Error:

The trial court erred in finding that the officers' warrantless entry into the defendant's private vacation home did not violate the Fourth Amendment of the United States Constitution and Article I, Section 14 of the Ohio Constitution when the state failed to show exigent circumstances or any other valid exception to the warrant requirement.

Second Assignment of Error:

The trial court misapplied this court's holding in *State v. Neal* and the Ohio

Supreme Court's holding in *Columbus v. Fraley* and erred in denying defendant-appellant's request to present evidence of self-defense and in denying appellant's request for a self-defense instruction.

Third Assignment of Error:

The trial court erred in instructing the jury that "the deputies had a legal right to enter the trailer to arrest the defendant" as warrantless entry was not a fact that needed to be proven or disproven and simply created a prejudicial situation where the jury was led to believe that the actions of law enforcement officers were legitimate.

Fourth Assignment of Error:

The trial court erred in overruling the defendant's Crim.R. 29(A) motion for acquittal on the grounds that, when viewed in a light most favorable to the prosecution, the state had failed at the close of its evidence to meet its burden on essential elements of each charge.

Fifth Assignment of Error:

The verdicts finding defendant guilty of attempted felonious assault in violation of O.R.C. §2923.02(A) and O.R.C. §2903.11(A)(1) were against the manifest weight of the evidence, as all physical evidence presented at trial supported the defendant's version of the events and did not support the officers' testimony.

Sixth Assignment of Error:

The verdicts finding defendant guilty of attempted felonious assault in violation of O.R.C. §2923.03(A) and O.R.C. §2923.11(A)(1) were not supported by sufficient evidence, as the state failed to present any evidence supporting the officers' version of the events.

{¶ 3} Late in the evening on April 24, 2009, someone notified the Highland County Sheriff's Office that a lady was being assaulted with scissors at the Hickory Hills campground.

Deputy Ronnie Hughes arrived at the scene and met with the alleged victim, Dorothy Ellis. Ellis identified appellant as the perpetrator but said that she did not want to press charges. Deputy Hughes went to the appellant's camper to speak with her and warn her that if he had to return to the campground that night, someone would be going to jail.

{¶ 4}   Less than an hour after the first call, the Sheriff's Department received a second call indicating that appellant was driving up and down a campground road and threatening people.   When Deputy Hughes returned to the scene, appellant was in her camper.   Deputy Hughes told appellant that she was under arrest, but she refused to exit the camper or let him inside.   After a short argument, Deputy Hughes called for backup.

{¶ 5}   A short time later, Deputy Michael Gaines arrived on the scene.   When appellant still refused to come out, the deputies used a crowbar to open the camper door.   Once the door came open, Deputy Hughes attempted to grab appellant's wrist, but she escaped his grasp and ran to a back bedroom and locked the door.   After the deputies broke down the bedroom door and attempted to enter the bedroom, appellant threw bleach into their faces and forced them to retreat.   Outside, various bystanders brought water to them to wash their eyes. Deputy Hughes eventually subdued and arrested appellant.   She was later transferred to the local jail and accused the deputies of sexual assault.

{¶ 6}   The Highland County Grand Jury returned an indictment charging appellant with

two counts of assault on a peace officer. She pleaded not guilty to both charges and filed a motion to suppress (1) the statements she made to sheriff's deputies during custodial interrogation and (2) any evidence of the assault. Appellant argued that the deputies unlawfully entered appellant's camper and, thus, any evidence of the assault should be suppressed.

{¶ 7} The trial court partially sustained her motion. The court suppressed a recorded statement but allowed other statements to be admitted into evidence. Concerning to the suppression of the evidence of the assaults, the court ruled that exigent circumstances justified the forced entry. Moreover, the court concluded that even if entry was unlawful, appellant "had no right to commit an assault against the Deputies by throwing bleach in their faces and eyes."

{¶ 8} At the November 2009 jury trial, Deputies Hughes and Gaines recounted their version of the events. Dr. Thomas Randall, the emergency physician who treated the deputies, testified about the severity of the pain they experienced and the potential for permanent eye damage. Deputies Rob Music and Erica Engle both testified that during their encounters with appellant, she freely admitted the assaults but claimed that she had acted in self-defense and also stated that she had been sexually assaulted.

{¶ 9} Appellant testified in her own defense and explained that she had refused to exit the camper because a crowd of people outside were calling her "bitch," "cunt," and "slut" and

she was frightened.  Further, when the deputies entered the camper, she claimed that they

Tasered her breast and called her a "bitch."  Appellant did admit that she threw the bleach at

the deputies, but only after she received a "crushing blow to [her] vaginal" area.

{¶ 10} Appellant requested a self-defense instruction, but after she rested her case the

trial court refused to give the request and instruction.  Subsequently, the jury returned verdicts

finding appellant not guilty of felonious assault, but guilty of the lesser offense of attempted

felonious assault against the deputies.  The trial court sentenced appellant to serve consecutive

four-year prison terms for each count.  This appeal followed.

I

{¶ 11} In her first assignment of error, appellant asserts that the trial court erred by

overruling a portion of her motion to suppress evidence.  In particular, appellant argues that

the court's conclusion that exigent circumstances justified the forced entry into the camper is

erroneous.

{¶ 12} Appellate review of a motion to suppress evidence decision involves mixed

questions of law and fact.  *State v. Grubb*, 186 Ohio App.3d 744, 2010-Ohio-1265, 930

N.E.2d 380, at ¶ 12; *State v. Book*, 165 Ohio App.3d 511, 2006-Ohio-1102, 847 N.E.2d 52,

at ¶ 9.  In hearing such motions, courts assume the role of trier of fact and are in the best

position to resolve factual disputes and evaluate witnesses' credibility. *State v. Roberts*, 110

Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, at ¶ 100; *State v. Burnside*, 100 Ohio

St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8.

{¶ 13} Generally, appellate courts will accept a trial court's factual finding if competent

and credible evidence supports the finding. *State v. Little*, 183 Ohio App.3d 680,

2009-Ohio-4403, 918 N.E.2d 230, at ¶ 15; *State v. Medcalf* (1996), 111 Ohio App.3d 142,

145, 675 N.E.2d 1268.   However, appellate courts conduct a de novo review of a trial court's

application of law to those facts. *State v. Higgins*, 183 Ohio App.3d 465, 2009-Ohio-3979,

917 N.E.2d 363, at ¶ 14; *State v. Poole*, 185 Ohio App.3d 38, 2009-Ohio-5634, 923 N.E.2d

167, at ¶ 18.   With this in mind, we turn our attention to the facts adduced at the suppression

hearing.

{¶ 14} The trial court found that Deputy Hughes arrived at appellant's camper, knocked

on the door, conversed with her through an open window, and informed her that she was under

arrest.   Appellant, however, refused to exit the camper and refused to allow Deputy Hughes

to enter.   After Deputy Gaines arrived, appellant again refused to exit or to let the deputies

enter.   However, our review of the record reveals no evidence to indicate that the officers

interacted with appellant outside the camper and that she retreated inside the camper.

{¶ 15} The Fourth Amendment to the United States Constitution guarantees the rights

of people "to be secure in their persons, houses, papers, and effects against *unreasonable*

searches and seizures."[1] (Emphasis added.) The touchstone of Fourth Amendment

jurisprudence is that searches and seizures must be reasonable. See *Wilson v. Arkansas*

(1995), 514 U.S. 927, 931, 115 S.Ct. 1914, 131 L.Ed.2d 976; *New Jersey v. T.L.O.* (1985),

469 U.S. 325, 337, 105 S.Ct. 733, 83 L.Ed.2d 720; *AL Post 763 v. Ohio Liquor Control*

*Comm.* (1998), 82 Ohio St.3d 108, 111, 694 N.E.2d 905. The question of whether a peace

officer's warrantless entry into a home is reasonable requires an analysis of the sequential and

consequential events that led up to and included the entry. *State v. Huff* (June 10, 1999),

Highland App. No. 98CA23; *State v. Russell* (Apr. 29, 1998), Summit App. Nos. 18206 &

18207.

{¶ 16} Here, the trial court concluded that exigent circumstances justified the

warrantless and forced entry into the camper. We respectfully disagree. Although the

exigent-circumstances exception to the Fourth Amendment warrant requirement may, at times,

appear to be somewhat amorphous, it can include such situations as (1) a danger to the peace

officers or others within the home, *State v. Clark*, Williams App. No. WM-09- 009,

---

[1] Fourth Amendment protections are applicable to the states through the Fourteenth Amendment Due Process Clause. See *Smith v. Maryland* (1979), 442 U.S. 735, 736, 99 S.Ct. 2577, 61 L.Ed.2d 220; *Mapp v. Ohio* (1961), 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081. Although Section 14, Article I, Ohio Constitution, offers substantially the same protections, see *State v. Jaeger* (July 9, 1993), Washington App. No. 92CA30, we confine our analysis to federal constitutional provisions.

2010-Ohio-2383, at ¶ 25, (2) imminent danger that evidence may be lost or destroyed, *State v. Holt*, Marion App. No. 9-09-39, 2010-Ohio-2298, at ¶ 29, and (3) peace officers in hot pursuit of a suspect. *Toledo v. Colbert*, Lucas App. No. L-08- 1209, 2009-Ohio-2766, at ¶ 46. We find that none of these types of situations apply here.

{¶ 17} We recognize that the trial court's exigent-circumstances finding is based upon the very real concern that "further confrontations would have occurred" if Deputy Hughes had left the scene to obtain a warrant. However, the deputy could have called for assistance, which, in fact, he did, and then obtained a warrant. Deputy Gaines could have controlled the scene and, if necessary, detained appellant if she emerged from the camper.

{¶ 18} Thus, we do not agree that based upon those particular facts, exigent circumstances justified a forced, warrantless entry into appellant's camper. That, however, does not end the matter.

{¶ 19} As the trial court aptly noted, even if the officers' entry was unlawful, appellant did not have the right to assault the deputies, nor does it shield her from the consequences of her actions. Our Eighth District colleagues addressed a similar situation and held that "violence against an officer after he has gained entrance into the residence, albeit unlawfully, with a purpose to cause physical injury rather than to resist entry, is not privileged conduct. Such conduct not only impedes the police but endangers all parties involved." *Middleburg Hts.*

*v. Theiss* (1985), 28 Ohio App.3d 1, 5, 501 N.E.2d 1226.

{¶ 20} We believe that whatever limited right appellant had to resist the unlawful entry, that right vanished once the deputies were inside and appellant's subsequent actus reus, i.e. throwing bleach in the deputies' faces when they entered the bedroom, constitutes an "independent criminal act."  See *State v. Trammel* (Jan. 22, 1999), Montgomery App. No. 17196.  Further, regardless of whether the entry was lawful, the Fourth Amendment does not confer a right on suspects to assault peace officers. See *State v. McCoy*, Montgomery App. No. 22479, 2008-Ohio-5648, at ¶19 (discussing a homeowner's right to use deadly force).

{¶ 21} We fully agree with the trial court that sound public policy requires a suspect to submit to arrest, even if law-enforcement authorities have unlawfully entered a home.   Physical confrontation serves no purpose and endangers everyone.  If authorities have indeed acted unlawfully, other means exist to addressing those actions, including actions in courts of law.

{¶ 22} Our conclusion comports with decisions from other jurisdictions that have confronted this issue.  See, e.g., *United States v. Waupekenay* (C.A.10 1992), 973 F.2d 1533, 1537 (unlawful entry did not require suppression of evidence that occupant pointed a firearm at officers*); People v. Klimek* (Ill.App. 1981), 427 N.E.2d 598, 603 (exclusionary rule does not reach so far as to suppress evidence of a defendant's unlawful conduct in response to police actions in violation of the Fourth Amendment); *New Mexico v. Travison* (NM.App.

2006), 149 P.3d 99, 102 (exclusionary rule does not foreclose the use of evidence obtained in response to the officers' entry).

{¶ 23} For these reasons, we believe the trial court's conclusion to refuse to suppress evidence of the assaults against Deputies Hughes and Gaines is correct, albeit for different reasons.  Consequently, we hereby overrule appellant's first assignment of error.

II

{¶ 24} In her second assignment of error, appellant asserts that the trial court erred by refusing to give the jury a self-defense instruction.  Although a trial court has the discretion to fashion jury instructions, a court must give a particular instruction if the evidence warrants such an instruction.  The standard of review, therefore, is whether "the trial court abused its discretion by finding that the evidence was insufficient to support the requested charge." *Smith v. Redecker*, Athens App. No. 08CA33, 2010-Ohio-505, at ¶52.

{¶ 25} Generally, an abuse of discretion is more than an error of law or judgment; rather, it implies that a court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Herring* (2002), 94 Ohio St.3d 246, 255, 762 N.E.2d 940; *State v. Clark* (1994), 71 Ohio St.3d 466, 470, 644 N.E.2d 331.  Furthermore, when considering the abuse-of-discretion standard of review, appellate courts must not simply substitute their judgment for that of the trial court. *State ex rel. Duncan v. Chippewa Twp. Trustees* (1995), 73 Ohio St.3d 728, 732, 654 N.E.2d

1254; *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301.

{¶ **26**} In the case sub judice, the trial court declined to give self-defense instruction for two reasons: (1) appellant created the situation, and (2) the Ohio Supreme Court has held that "[i]n the absence of excessive or unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows * * * is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances." *Columbus v. Fraley* (1975) 41 Ohio St.2d 173, 324 N.E.2d 735, at paragraph three of the syllabus. Appellant argues that the trial court misapplied *Fraley*. We, however, disagree with appellant.

{¶ **27**} During her testimony, appellant admitted that Deputy Hughes was in uniform when he approached her camper and that he informed her that she was under arrest. Thus, appellant was unquestionably aware that Deputy Hughes was a peace officer and engaged in the performance of his duties. Also, we find no evidence of excessive or unnecessary force. Prying open the front door and knocking down the bedroom door was force applied to appellant's property, not to appellant herself.

{¶ **28**} We recognize that appellant testified that one of the deputies Tasered her and then she felt something hit her in the vaginal area. However, even if we assume that entry into the camper and appellant's arrest were unlawful, the fact remains that the deputies were

attempting to subdue a recalcitrant suspect who chose to scuffle with them.   After our review, we find nothing excessive or unnecessary concerning the degree of force applied and thus no abuse of discretion by the trial court in determining that the evidence did not warrant a self-defense instruction.

{¶ 29} Accordingly, we hereby overrule appellant's second assignment of error.[2]

III

{¶ 30} In her third assignment of error, appellant asserts that the jury instructions, wherein the trial court stated that "the deputies had a legal right to enter the trailer to arrest the defendant," were irrelevant to the charges against her and created a "prejudicial situation" that led the jury to believe that the deputies actions were justified.

{¶ 31} In light of our resolution of appellant's first assignment of error, we agree with appellant that this portion of the instruction was improper.   We do not agree, however, that the instruction amounts to reversible error.

{¶ 32} The Ohio Supreme Court has stated that "[r]eversible error ordinarily *can not be predicated upon * * * one sentence* or one phrase of the general charge." (Emphasis

---

[2] Appellant's assignment of error also asserts that the trial court misapplied our holding in *State v. Neal*, Highland App. No. 03CA19, 2004-Ohio-6823.   However, because the trial court was clearly correct in declining the instruction under *Fraley*, we need not, and do not, address that argument.

added.) *State v. Porter* (1968), 14 Ohio St.2d 10, 13, 235 N.E.2d 520; see also *Snyder v. Stanford* (1968), 15 Ohio St.2d 31, 238 N.E.2d 563, at paragraph three of the syllabus.  Jury instructions must be reviewed in their entirety to determine whether a defendant suffered prejudice. *State v. Wagner*, Cuyahoga App. No. 93432, 2010-Ohio-2221, at ¶43; *State v. Covington*, Franklin App. No. 06AP-826, 2007-Ohio-5008, at ¶3; *State v. Teachout*, Lake App. No. 2006-L-081, 2007-Ohio-1642, at ¶19.  In the case at bar, after our review of the jury instructions as a whole, we are not persuaded that this one misstatement had any prejudicial effect.

{¶ 33} Appellant does not claim that the trial court's instructions on the actual elements of the offense were erroneous, and we find no error in our own review of the remaining charge. Also, we find no claim of any other error in the lengthy jury instructions.  We concede that the instructions indicated that the officers possessed a "legal right to enter the trailer," but we are not persuaded that this language caused a "prejudicial situation."

{¶ 34} We also hasten to add that the issue was not whether the deputies had a legal right to be in the camper, but rather whether appellant assaulted them.  Although the deputies had no legal right to force entry, they did have a legal right to be free of assault, and appellant was not privileged to perpetrate an assault simply because of their forced entry.  Appellant admitted that she threw bleach in their faces, and we cannot find anything more than harmless

error in the trial court's misstatement of the jury instructions. See Crim.R. 52(A).

{¶ 35} For these reasons, we find no merit in the third assignment of error, and it is thus overruled.

IV

{¶ 36} We jointly consider appellant's fourth and sixth assignments of error because they raise similar issues. Appellant argues that the trial court erred by overruling her Crim.R. 29(A) motion for acquittal and that the verdicts are not supported by sufficient evidence. Our standard of review for both arguments is the same. See *State v. Jackson*, Ross App. No. 09CA3120, 2010-Ohio-1846, at ¶ 5; *State v. Hairston*, Scioto App. No. 06CA3081, 2007-Ohio-3880, at ¶ 16. Here, we must determine whether the evidence adduced at the trial, if believed, supports a finding of guilt beyond a reasonable doubt. See *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541; *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492.

{¶ 37} With regard to the Crim.R. 29(A) motion, appellant contends that she should have been granted a judgment of acquittal because no evidence was adduced to prove the "serious physical harm" element of R.C. 2903.11(A)(1).[3] We disagree with appellant.

---

[3] R.C. 2903.11(A)(1) states, "No person shall knowingly * * * [c]ause serious physical harm to another * * *."

{¶ 38} "Serious physical harm" is defined under R.C. 2901.01(A)(5)(c) and (e) as including harm that produces "temporary, substantial incapacity" or "acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." At trial, Dr. Randall expressly opined, based upon his training and experience as an emergency-room physician, that the bleach caused Deputy Hughes to sustain a "temporary substantial incapacity." The eye burns that Deputy Gaines received were not as severe, but Dr. Randall testified that both of them experienced "prolonged or intractable pain." The witness further related that on a scale of one to ten, Deputy Hughes reported his pain at an eight, while Deputy Gaines reported a five.

{¶ 39} The deputies also testified concerning the "temporary substantial incapacity." On cross-examination, Deputy Hughes testified that he could not recall his location in the camper after the bleach was thrown because he could not see. Deputy Gaines also related on direct that after they went outside to flush their eyes, they had to return to the camper "with limited vision" to arrest appellant. Diminished vision is a "substantial incapacity" for deputies who, having already suffered an assault, must return to the camper and arrest their assailant. Thus, we believe that sufficient evidence of "serious physical harm" supported the trial court's denial of appellant's Crim.R. 29(A) motion.

{¶ 40} As to appellant's general claim of insufficient evidence in her sixth assignment

of error, appellant incorporates the arguments made with respect to her fourth assignment of error. Here, in light of the fact that we have already found no error with the trial court's denial of the Crim.R. 29(A) motion, we need not further address that point any further.

{¶ 41} Appellant also asserts that the evidence is insufficient due to a lack of physical evidence to corroborate the deputies' testimony. Here, no corroborating evidence is necessary. It is well settled that the weight of the evidence and credibility of witnesses are issues for the jury as the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 231, 227 N.E.2d 212; *State v. Antill* (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548. A jury is free to believe all, some, or none of a particular witness's testimony. *State v. Caldwell* (1992), 79 Ohio App.3d 667, 679, 607 N.E.2d 1096. In the case sub judice, the jury obviously found the testimony from Deputy Hughes and Deputy Gaines credible, and their testimony is sufficient to sustain the jury verdicts.

{¶ 42} For all of these reasons, we conclude that sufficient evidence was adduced to support the trial court's denial of appellant's Crim.R. 29(A) motion, as well as the jury verdicts. Accordingly, we hereby overrule appellant's fourth and sixth assignments of error.

V

{¶ 43} In her fifth assignment of error, appellant asserts that the verdicts are against the manifest weight of the evidence. In particular, she maintains that the physical evidence supports her version of events. Appellant also takes issue with the fact that the jury was not

permitted to take into account (1) whether the deputies lawfully entered her camper or (2) whether she acted in self-defense.

{¶ 44} When reviewing a claim that a verdict is against the manifest weight of the evidence, an appellate court may not reverse the conviction unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Earle* (1997), 120 Ohio App.3d 457, 473, 698 N.E.2d 440; *State v. Garrow* (1995), 103 Ohio App.3d 368, 370-371, 659 N.E.2d 814.

{¶ 45} In the instant case, regardless of the physical evidence to which appellant refers, the jury obviously believed the deputies' testimony. We are not persuaded that this amounted to a manifest miscarriage of justice. Furthermore, as we previously noted, we agree that the deputies did not lawfully enter the camper, but that fact is irrelevant because appellant's assault is an independent criminal act that the unlawful entry does not justify. Furthermore, as we stated earlier, appellant was not entitled to use force to resist the arrest, even if the entry and arrest were indeed unlawful. Accordingly, we hereby overrule appellant's fifth assignment of error.

{¶ 46} Having reviewed all errors that appellant assigned and argued in her brief, we hereby affirm the trial court's judgment.

Judgment affirmed.

McFARLAND, P.J., and KLINE, J.: concur.